Messrs. Fleming and Shagan. Is that pronounced correctly? And Ms. McKinney. And Mr. Fleming, whenever you're ready. Good afternoon, Your Honors. My name is Stephen Fleming. I am counsel for the petitioner in this matter, Mr. David Evdokimow. And may it please the court, counsel. Was there a time for rebuttal? I had asked for two minutes. Absolutely fine. Thank you. And the basic facts, I don't think, are very complicated. The petitioner, Dr. Evdokimow, came to the United States as a J1 exchange program visitor, non-immigrant status in 1992. Can you keep your voice up, please? I'm sorry. Sure. Of course. The petitioner came to the United States as a non-immigrant in 1992, switched status to another version of non-immigrant status, the O1, in 2000, and remained in the United States throughout that time up until when he was removed last year. He is from Albania. I think Judge Beavis has a question. I'm sorry. We're familiar with that background. Could we get into the issues? You know, you say that we can't take notice that the loss was over $10,000, but our own president, Fen Wang, says the government can rely on the PSR to prove the size of the loss. So why doesn't that foreclose the argument that this crime involved more than $10,000? Thank you, Your Honor. Your Honor is correct in that the circumstance-specific approach certainly does allow for expanded consideration of documents, including things, the catchpins are reliability, that the document be tethered to the conviction, and that in the absence of conflicting evidence, that it can be relied upon. So I think those are the three criteria. So you've got a PSR that says nearly $3 million, and you've got convictions for indictments for what appears to be nearly $3 million, and then you have, he's paid all outstanding taxes, and so that sounds like he's done, that's essentially an admission of all the monies that he's paid that you're way, way, way above $10,000. That is correct. Of loss. Your Honor, it does have the record correct that the petitioner had been convicted of those counts. He had paid the taxes. I think it's in that approximate amount that Your Honor mentioned, and the PSR, PSI, Pre-Sentence Investigation Report, does illuminate those amounts. The superseding indictment also has a listing of the amounts that, when added up, would be in that range that Your Honor came up with. So, obviously, those are the facts. Doesn't that determine our decision in this case? It very well may, yes. I mean, I have to concede. Then what else would we base it on, other than your allegation, which seems to be without foundation? Right, so there really isn't any other, I mean, the underlying procedural matter was this was a jury conviction, so obviously they did not find the amounts, so the government here would need to rely on something else. And we do need to concede, obviously, that this court, as well as other courts, have extended the consideration of documents to include such documents as a PSI or Pre-Sentence Investigation Report, so that may very well preclude the petitioner from being able to establish that he is not an aggravated felony based on the loss amount. Given that concession, maybe we should move on to the service issue. Now, 8 CFR 103.8 lists delivery methods that count as personal service, and one of them, A little 3, says personal service takes place when the government delivers a copy to the office of an attorney. Now, doesn't that pose a problem for you? A copy of this service was provided to Mr. Docomo's attorney. It was eventually provided. It was not initially. The final order, final administrative removal order, was forwarded by mail to respond to the petitioner when he was in custody. That was in December 11th of 2020. Council was not provided, despite the fact that council had entered an appearance and had provided a notice of entry or appearance to the Department of Homeland Security and the Enforcement and Removal Office, was not provided a copy of that until January, I think, was 21st of 2021. And the council did not learn of it, actually, until when petitioner was moved from penal custody to immigration custody. He had filed for a bond with the immigration court, and that's when... But he didn't learn of it, but the regulation doesn't condition it on his knowledge of it. It was delivered to the office of attorney. You say, yes, it eventually was. So doesn't that bar your service claim? Right. I just would point out the extended period of time. Prejudice? I'm sorry? What is the prejudice? Right. There is no prejudice in the sense that petitioner had actually... Isn't that determinative? It very well may be, yes. Petitioner had already actually lodged a petition for review with this court. So in that sense, he had been able to pursue his remedies. So if there was an error, the error was harmless then? Yes. Okay. On the other issue that we have on the exhaustion, we'll hear from the amicus council then. Just to substantiate the actual... I'm sorry. On the exhaustion issue, are you dealing with that, or is amicus council? No, I think the amicus will be handling that issue. Okay. I don't think we have any more questions for the moment, unless you want to add anything before you sit down. We'll get you back on rebuttal. It's up to you. No, Judge. Thank you. Okay. Mr. Shagan. Good afternoon. Let me just say what a pleasure it is to be back in a real court. Amen. Not on television. Amen. Of course, next week they'll be back in Philly to amass mandates, so I don't know. I have faith that the future will be bright. Amen. I hope. How do you pronounce your last name? Shagan. Shagan. Okay. So your honors asked us to take a look at whether under 1252D, a petitioner challenging his pharaoh under 238 or under 1228 under the USCS, waives his argument if it's not raised before the Department of Homeland Security. This is a really interesting issue, but it's like a Mozart opera. It keeps giving new things to you every time you think about it, and I'm afraid that's true with me. The first thing I will point out is that the Department of Homeland Security procedures that allow them to issue a pharaoh is not an adversarial proceeding. So you don't have a neutral trier or arbiter there. It is simply an enforcement agency, presumably because Congress determined that for very simple deportation cases, which are free from doubt, that it should be expedited and moved ahead quickly, as opposed to going through the 240 judicial proceedings under the EUIR. So as I wrote and as I firmly believe, whether somebody is an aggravated felony goes straight to the jurisdiction of the administrative agency. Then we have the added issue of, well, okay, so yes, it goes to the subject matter jurisdiction of the administrative agency, but could not Congress limit the ability to have that administrative agency's order reviewed by the Circuit Court of Appeals? And I think in the abstract, theoretically it could. I don't think it did in this case by limiting the issue that it must be raised in prison or wherever the fellow is at the time he gets his notice of intent. Because if that were the case, then you would have to get to the issue of, does that present a reasonable and effective remedy within the 1228? If it doesn't present a reasonable and effective remedy, then I think the order of DHS is subject to collateral attack, either in federal court under the regular injunctive relief or in habeas, which in most cases would be applied here. And I think that's exactly what Congress did not want to do. I think what Congress did want to do was give an effective and adequate remedy for an alien who is in removal proceedings, and therefore you petition for review so it would be done faster. Then you get to the issues that are created both because what you're dealing with is subject matter jurisdiction when you're dealing with an AGFEL issue for the admin agency, but also whether it's an adequate remedy. So it's not enough to say that under our jurisprudence, we generally find you have to raise all issues in an adversarial proceeding below. You also have to come to the conclusion, I believe, that it would be a reasonable and effective remedy for somebody in a, we'll say in alien shoes, although he may be a citizen. And a hypothetical that I thought of for sort of analyzing this myself is, suppose I know the fellow at DHS is doing the charging document, and I feel I have a very good claim for derivative citizenship for my client, but he's only been charged with a mere CIMT. And a mere CIMT will still get him deported if he goes through the EO. I'm sorry, Your Honor. We are plagued by acronyms. In any event, he has a crime involving moral turpitude. It would not put him normally in 1228. How would the appellate court feel if we just decided to do this to speed things along? We don't have to go to the BIA. We don't have to deal with an immigration judge. We'll just come here and tell you what the citizenship issue is. And under 1252, you're also obligated then, if there's a factual issue, to refer it to district court. And so that would be much nicer for me. But I would think that that would be wrong and that I shouldn't be able to do that. Why shouldn't I be able to do that? Because that is jurisdiction skipping, or putting me in a better form than the one that really is allocated for me under the statute. And I also think you run the risk with the... By the way, I see AGFEL, whether you're a permanent resident or not, or whether you've been convicted or whether you're a citizen, as all the same question. They're all jurisdictional questions. Well, questions of fact. They could be questions of fact or it could be questions of pure law. So the question then is whether you can raise the questions of law before the agency. And, you know, I want your view on 8 CFR 238.1 D2 little 3. The agency has to end expedited removal from meetings if the, quote, officer finds the alien is not amenable to expedited removal. So doesn't that suggest that if Docomo could have had a chance to rebut legal conclusions before the agency? Oh, I think there is a possibility he could have. Let's say he was a lawyer and he knew about the law, and within 10 days, and he spoke English, and he was very familiar with the legal system, I think it would be possibly realistic to expect that he would. The average response I get when I tell a client, you've been charged as an ag fell, is they assure me, no, that's wrong. I was only convicted of a misdemeanor. They have no idea. This law is complicated. But the question is what we can expect in terms of exhaustion. And so there are a couple possible responses for him. One is we're not allowed to do this before the agency. Now, you don't seem to think that's the case. Another possibility is maybe you are allowed to, but this form doesn't flag that possibility, and so it's not reasonably available to the alien. And I see those two lines of cases, but I would analyze it a little bit differently. I think in the EKI case and the Fourth Circuit case, yes, I think what they were in effect doing is they were sort of collapsing the issue. I think the first issue is does this court have the place that you go under because 1252 does not mention issue preclusion. It just says administrative exhaustion. And the case law on administrative exhaustion often has to do with collateral attacks in other courts. And that is only permitted if you don't get an effective and adequate remedy in the administrative proceeding. And I think what those courts were doing is they were saying, look, this is not an adequate and effective remedy as to the issue of law. Instead, you know, it's not in their forms. It's not something that they invite conversation on. There are complicated issues. It's not an adversarial proceeding below. It's not like you're going to get a decision that's going to help guide you on a petition for review. You are simply getting, and it's an issue in every case, because DHS had to make the determination that you are an AGFEL or you don't belong where you are. And if I'm right that we cannot agree to just look the other way on an AGFEL issue and that that would be the wrong thing for me to do to get to this court, then it seems to me we've concluded that this is an issue of jurisdiction and that that's effectively not waived in the 1228 proceedings when you come to this court. And I think that makes the most sense, because why would Congress want you to go file a habeas or go file an injunctive claim on an accusation that I didn't get an effective remedy because I didn't have a chance to really respond. I didn't understand the issues. It took me a while to get a lawyer and so on. Are the regs in 238 in any way intentioned with the form I-851? Or are they not intentioned? I'm sorry. Are the regs in 238 intentioned with? In other words, does one slightly contradict what is in the form I-851? I mean, the Fourth Circuit looked at both and thought that they were not intentioned, but I thought that there were others who thought, well, perhaps they are. Well, I actually don't know the answer to that because I can't figure out. There's a gap in the creation of the 238 proceedings and 1252, and that's not the only gap because 1252 has jurisdiction stripping provisions for aggravated felonies, but obviously in 238 you have an aggravated felony or you wouldn't be there, or at least an accusation of one, I guess. So it seems to me the most efficacious way of resolving the issue and the one that Congress would have chose is if you have a question about whether something constitutes, well, whether you belonged in 238 to begin with, you can raise that here. Now, the vast majority of cases are not going to have too much meat on those bones, but still this would be the proper forum to do that. Well, you need someone with legal training to determine those issues. Yes, and not just legal training, even lawyers are going to be complicated. I mean, there's many a criminal defense lawyer that thinks that a misdemeanor can't be an aggravated felony. It's just this world doesn't make sense to them for obvious reasons. It doesn't make sense to a lot of people, but nevertheless, that's what the law is. I see I'm out of time. That's fine. We may have asked you on rebuttal. Thank you very much for the opportunity to address this, and I also would like to ask that I file the motion to include one of my law students, former law students on the brief, and she really did wonderful work. I'd like to give her credit. No, thank you, and we thank her as well. Much appreciated. Thank you. Ms. McKinney. Good afternoon, and may it please the Court, my name is Catherine McKinney, and I represent the respondent, Merrick Garland, in this matter. With respect to the first issue raised in this petition. Yeah, why don't we go to the second issue first, the exhaustion issue. Address the exhaustion issue, yes. The government urges the Court to adopt the approach of the Eleventh Circuit in the Mala decision, and there the Eleventh Circuit came to the conclusion that exhaustion applies in this context. There wasn't a reason to treat the final administrative removal order. Why is the Fourth Circuit and the Fifth Circuit wrong, the Fourth Circuit at the end? Judge Duncan did a very comprehensive analysis, I thought, of both the regulation and the form. What was wrong with her analysis? Several things. As the government noted in its brief, the Fourth Circuit relied first on the form, and as we noted in the brief, while the form does on the second page have some check boxes, those check boxes aren't exclusive, and if we look at the notice itself on the first page, the notice of intent includes allegations of both fact and law, and if we look at the notice of intent, it provides notice of the charge, which includes the removal ground. So the notice itself contains allegations of fact and law, and then the notice and the regulation provide that the petitioner has the opportunity to rebut those. Well, let's take the form on its own. I'm presuming a lot of sophistication if we're expecting the person supposed to fit it within one of these boxes. None of the boxes, you would agree, you're nodding right now, seems to fit. We would acknowledge that the check boxes seem to lend themselves to factual challenges, and none of them specifically says aggravated felony. There's an option to check. I do contest. You contest, but then you're supposed to pick one of the four becauses, and none of the four under it fits the situation, and I see you nodding. I do understand that the Fourth Circuit reached that conclusion that because of the boxes, the form itself lended itself that way, and the Fifth Circuit relied on the regulation, that it seemed to indicate that when factual, material factual challenges were in dispute, and therefore those courts came to the conclusion that exhaustion only of factual issues was required. And the government, obviously, for the reasons in our brief, preferred the approach of both the Eighth and the Eleventh Circuit. The form itself doesn't expressly limit the boxes. The first page, the main part of the form, definitely has allegations of both fact and law. What box do you check? The alien has the opportunity to file a rebuttal to the charges or exercise one of the other rights as happened in this case. I am attaching documents in support of my rebuttal and request for further review. I mean, if I'm an alien, what does that tell you? I thought you might say I was not convicted of the criminal offense described in the allegation above, and that would seem to me to be factual, but, I mean, some think of it as factual and legal. What makes you – you're not making the argument that it's legal. You're saying that these boxes here are factual. We're saying that the boxes aren't exclusive, and we're – obviously, it's possible to check the box. I can test. So the boxes are factual, but they're not exclusive? The boxes are – the sub boxes, I guess, are factual, but not exclusive, and they do have the option to check I can test, and they have the option to do, as occurred here, to file a written response, which could include a rebuttal, a request for extension, a request to review, which is what happened here. I wasn't expecting a lot of an alien, but we've got the parameters of that argument. But the Fourth Circuit also made a second argument based on the regs. So let's go to 8 CFR 238.1. If you look at B2, it distinguishes allegations of fact from conclusions of law. And then in the alien's response, the alien has to indicate which findings are being challenged, and findings ordinarily means findings of fact, Black's Law Dictionary and all. So where is – you know, D2 is talking about genuine issues of material fact. So if the focus in here is about the allegations of fact and the challenging, the particular, I think, C21, allegations contained in the notice of intent, allegations and finding both look like they're geared towards factual issues. So what in here is better read as opening this reg up also to legal conclusions, challenges? So thank you, Judge Bibas. If we look at that specific portion that you were just quoting from, the petitioner may file a written response rebutting the allegations supporting the charge or exercising the other rights that the government noticed – noted in its brief. So there we know that they may – Which subparagraph are you in? C21? Response C1. The petitioner has 10 calendar days to submit a response rebutting the allegations supporting the charge. So there in the regulation, they could rebut the allegations supporting the charge, and then as we noted in the notice, the charge itself contains allegations of law, the removability ground. And I would just like to point to a couple of examples where something outside of the checkbox circumstance occurred. In addition to what happened in this case, we know that petitioner's counsel requested an opportunity to review and rebut, but he did not then subsequently avail himself of the opportunity to rebut. And this was cited in the government's initial brief. In one of the cases, which was in the Netto case, that was an unpublished decision from this court, but just looking at what happened in that case there to see what happens in these Faro cases. In the Netto case, there the petitioner had submitted something in response to the notice of intent, contesting the finality of the conviction. Apparently there there was a motion to vacate pending somewhere else in another court. So there we had an instance where the petitioner did submit an argument contesting the allegations and charges outside of that context. Maybe the agency has allowed this, but when I look at this language, you know, under C, you can rebut the charges, but then under C-1, the alien's response may submit a written response rebutting the allegations supporting the charge. And above, we were told that these were allegations of fact in B-2-1. So what in the regs, as opposed to maybe the case law broadening the regs, makes clear that you're allowed to, you know, challenge the conclusions of law? Yeah, thank you, Judge Bivas. If we look back before we were quoting from, I believe it was the alien's response C-1, if we look at the notice provision 2-1, what the notice. B-2-1. Yes. Okay. What the notice is supposed to contain, the notice shall include allegations of fact and conclusions of law. So that sort of mirrors what the government was arguing looking at the form itself. Okay. It has to set out those, but where does it advise that this is a procedure allowing the alien to contest not just the allegations of fact, but also the conclusions of law? So the notice itself contains allegations of fact and law, and the regulation provides that the response can rebut the allegations supporting the charge. Except the word allegations in B-2-1 was used for the fact part, and there was a separate word conclusions that was used for the law part. That's true, Your Honor. And, again, it's not just the regulations, but the notice itself providing your rights and responsibilities section indicates that you may respond to the above charges, and the above charges include the conclusions of law. Okay. So that respond to the above charges, you think we can take the notice form that's given together with this, and it could be read broadly to say you can respond to it all? Is there, if we look at it through the lens that the Fourth and the Fifth Circuit did, which, again, the government is urging that the Eleventh Circuit's approach and the Eighth Circuit's approach was a better approach. But under the Fourth Circuit approach, wouldn't you then have someone trained in the law determining the conclusions of law, whether they were correct or not? Well, the regulations provide for a deciding officer to make that decision. But the deciding officer at DHS is not necessarily trained in the law. Are there officers trained in the law doing this function? The officers, specifically it's a DHS officer that must make this decision as the deciding officer. They're not prohibited from, if there were, for example, a legal issue that they needed to consult, DHS has attorneys that they are able to consult with if they needed guidance on that issue. And that actually, if we're looking sort of at the broader, and I know that's what Amicus Council was sort of arguing, some more broader policy concerns with respect to exhaustion of remedies. And here that is an instance where perhaps if there was a response filed or rebuttal or any indication that perhaps it wasn't an easy or a simple or perhaps it was a more complex case on this issue, the DHS officer has the discretion to terminate the administrative removal proceedings and or file an NTA and initiate removal proceedings where perhaps those issues could be more broadly explored. Just on to, I just wanted to cite two more examples where the petitioners had actually made a legal challenge below to the notice of intent. In the Tenth Circuit there's a published case that is Zarate 892 F3rd 1137, a Tenth Circuit case in 2018. And there the petitioner challenged the aggravated felony removal charge, the legal conclusion, and then DHS went ahead and issued the FARO. And in one of the cases where petitioners were challenging, it was an equal protection challenge to the administrative removal procedures, that was a Sixth Circuit case, Graham, that's 579 F3rd 546, the Sixth Circuit case. And there, even though in that case the context was an equal protection challenge to someone placed in expedited removal as opposed to being placed via the NTA in removal proceedings, and there it was clear from the fact pattern set out that the petitioner had also raised a legal challenge below to DHS. In that case, just to put forth examples that... Has DHS ever considered rewriting the regs? I do not know the answer. I mean, wouldn't that make all our lives a lot easier? You've got a circuit split. Why not just going forward clarify things and we go on so much more easily from there? I do understand and I appreciate the concern, and of course it has led to a circuit split. The government obviously proposes that the court go by way of the Eleventh and the Eighth Circuit. Just to make two more final points with respect to that, that with respect to general exhaustion principles, this court has already applied exhaustion to the aggravated felony question outside of the expedited removal context. So just note that they have applied it in that context. I was going to move on unless the court had further questions with respect to the service issue. It was the government's position that no prejudice has been shown in this case, so the court need not... I think they conceded that. Okay. And the last one... And the last one was conceded as well. So again, thank you very much, and the government requests that the court deny the petition for review. Thank you. Thank you. Mr. Shagan, that's the issue that we're most... Do you want to have any rebuttal on that? Two very quick points, Your Honors. First, I would point to an old-fashioned rule that's still the law in Fong-Ho Tan, which is that if there's any doubt in the construction of a statute that leads to deportation, it's supposed to be construed in favor of the alien. And although that's a 1948 case and often forgotten, it is the Supreme Court. It's never been reversed, and that is the standard. The other thing I would point out is that in those waiver issues that my learned colleague has referenced, where the aggravated felony issue was waived, that was an adversarial proceeding. And so in an adversarial proceeding, you have a complaint. You have an answer. There is a neutral trier of fact. There is actually a proceeding that goes on where that remedy or that result could lead to a remedy. In the expedited removal proceeding, by contrast, you're really just dealing with an enforcement action. And, you know, as Your Honor pointed out, the regs look to factual statements, which is what moved the Fourth Circuit. But let's say it didn't do that. Let's say it had a blank in the form that said, name all the reasons why you're not an Ag Fel. What would constitute a waiver in that circumstance for a pro se alien in response? Suppose he says, well, my crime wasn't that bad. Does that raise the issue? In none of these cases do I see a discussion as to what would actually preserve the issue. And what we're talking about here is not just the rights of the alien, but we're also talking about the power of DHS to issue what has to be one of the greatest forfeitures you can receive as a human being, the loss of your ability to reside in the United States, or in any country for that matter. And it's a big forfeiture, and the Supreme Court has recognized that as such. And you're giving an administrative agency the authority to do that. There ought to be some judicial check on that authority just to make sure everything is right. And I think being able to raise that issue on a petition for review is reasonable. A quick question. We have a case called Bin Lin where we held that exhaustion in 1252D is jurisdictional and extends to exhaustion of issues. How does that case affect your analysis? Well, it's difficult, and I can understand the Attorney General's position on this, because I guess in a way I don't fully agree with it in the sense that it may be jurisdictional, but it's also part prudential. And in an adversarial context, it's much more to the point of raising an issue where I can understand. I mean, if you're in a court below and you don't raise an issue, then it seems to me it's jurisdictional in the sense that what you're reviewing is the lower court's action. You're not just reviewing abstract principles. Here, there is no lower court. The DHS is not a court. They are not adjudicating this the way a court would. It's not like when you are getting the FARO from DHS, you are dealing with something that was fully adjudicated or could even have been fully adjudicated below, because there is no adjudicator. There's an accusation that is taken as final, and you have a right to petition for review before this court. And at that time, the question would be, does the waiver of the issue really result in a jurisdictional loss? Because, after all, in every case that comes up under 238, your nationality, whether you're a permanent resident and whether you've been convicted of an aggravated felony, are issues. They may not have been debated. There may have not been a briefing on it, because there's no opportunity for that below. But they are issues, or else the agency couldn't have done what it did. And so it seems to me they should be prepared to respond to it, here or anywhere else. It's not like there's a loss of time or a prejudice to a lower court or that you're jumping in and taking out of the administrative process by intervening in what they're doing. It's simply they've made the accusation, and now you're up here. Can you raise any of those three faults for the first time here? And I would say I actually think Congress intended that you be able to do so in the petition for review process, because they wanted a judicial oversight, a fast judicial oversight into the administrative proceedings. And this would be far faster than making us go and file in the middle district a collateral attack. So it seems to me both within Congress's intent to create an efficient remedy and also it preserves the ability to check an administrative agency. Or one way to think about it would be, suppose DHS just started giving out willy-nilly 238 orders, and if the alien didn't complain in 10 days, well, you're stuck, and that's too bad for you. I mean, that's not the way our law works. It's just there's something so counterintuitive to me about that that I just can't believe that would be the sort of Frankenstein creature that was created by Congress.  Thank you very much. Okay. Thank you, Your Honors. It was a pleasure. Thank you to all counsel for being with us today. I would ask if we could have a transcript prepared of this oral argument, and the government, would you please be willing to pick that up? Is that okay? A transcript? Yes, ma'am. You can just check with the clerk's office afterwards.